The next matter on our calendar is Jane Doe & Baby Doe v. Health & Human Services & Merck & Co. We'll hear from the Doe's first. Good afternoon, Your Honor. This is Patricia Finn. I'm sorry. Would you speak up? I can barely hear them. Yeah, I'm sorry. I have a little bit of laryngitis. Can you hear me now? Yes. Do you have me speak up? Okay. I will. I'll speak up. Anyway, my name is Patricia Finn, and I represent the plaintiff Jane Doe and her disabled son, Baby Doe, and he was allegedly injured. It was a vaccine-induced autism, and he suffers from a condition known as isolated autism. Doe and her family are from New York City, and in the first 20 months of his life, Baby Doe had received 19 vaccines from his pediatrician that were recommended by the CDC. This included measles, mumps, and rubella, or an MMR vaccine, and a series of the merosol-containing vaccines that I will refer to as TCBs. And plaintiffs allege that this combination and series of vaccines had pushed him over the edge into autism. Can you... Counsel, counsel, is there any... This is Judge Kuhler. Is there any scientific support for the claim that these vaccines push, as you say, Baby Doe into autism? Or how did you put it? Push him somehow into the syndrome? Is there any scientific support for that? Oh, yes. There is quite a bit, and part of the reason that I'm here is that the district court had made a determination that MMR does not cause autism, when in fact that was never even pleaded in the complaint. There is no allegation here that the MMR vaccine that Merck manufactures is what had caused the autism. This case comes from an omnibus autism proceeding that was held in between 2002 and 2010. And in that case, there were two theories of vaccine-induced autism. One was MMR and TCBs cause autism, and the court held that only an MMR theory of autism had been litigated, and that was reversible error. It was never litigated. Subsequent to that, the court ruled that because my client appeared as one of 5,400 test cases petitioners in the TCB cases, the Marisol-only cases, that she had somehow abandoned her claim that the MMR and TCBs caused autism. There were six test cases. Three of them were MMR and TCBs combined caused autism, and the other three, which Baby Doe was one of the petitioners, was a TCB-only case. The court concluded in this decision, and I'm not sure why, that he made a jury-like type finding that MMR does not cause autism, when in fact that was never even prosecuted. Well, Ms. Finn, could you help me with this? I thought that the MMR-only theory was abandoned by the steering committee because the test cases that went up on MMR plus TCB were adjudicated against the plaintiffs. Am I wrong about that? No, you're correct. All six test cases were dismissed by the special mask, but they are not admissible in the district court. Moreover, the claims of Doe go far beyond that particular claim that MMR and TCBs combined cause autism. She never abandoned it, but it goes beyond that because there were allegations that both the CDC and Merck knew, both prior to my client being vaccinated and during the OAP, that there was evidence that vaccines, both the MMR was linked to autism and that the result, there was a concealment of evidence to show that that never got into vaccine court during the OAP. And as a result of that, my client was denied OAP compensation for her claims that MMR and TCB caused autism. There were three counts in the complaint. And the first one, Doe alleged violations of the act against Merck under section 11A2A, which permits a litigant after exhausting in vaccine court to file a suit against Merck. And subsequent court decisions have narrowed that down to basically only a claim for fraud. She also moved under section 31 of the act against secretary of HHS seeking injunctive relief. The court held that my client was looking to have the district court revoke or restrain public health law 2164 in the state that mandates the MMR vaccine. But that is not at all what my client has requested. My client wants for the court to restrain Merck's, revoke Merck's license and order the secretary to do that. She never asked that the public health law be restrained. In fact, there are many other providers of MMR vaccine. For example, GlaxoSmithKline is distributing an MMR vaccine outside of the United States. Okay, let me just try to understand again what you're asking for and what you're not asking for. You're not challenging any New York state law. Is that correct? That was my understanding. But I want to make sure that that's what you just said, right? Yes, that is correct. Okay. So what you are asking for in one of the things you're asking for in this case is that this court direct the secretary to revoke Merck's license. Is that right? That is correct. And I thought the district court's response to that was that that's an authority that belongs to the FDA and that the courts would then review if you went to the FDA and asked them to provide that relief, but that it's not available in a plenary action. Am I wrong that that's what the district court said? The district court dismissed it and said that the appropriate relief was to go to the regulatory FDA. Okay. So the answer is yes, that's what the district, what I said is what the district court said. So now could you tell us why that's incorrect? Because under the Vaccine Act, under Section 31, the secretary has its own statutory licensing duties. And if the secretary has constructive knowledge of the Merck MMR vaccine being linked to autism and that it's a dangerous vaccine, that it is an avoidably unsafe vaccine, then it was Now, I understand that the court then went ahead and dismissed it and directed plaintiffs back to FDA, but then held that MMR doesn't cause autism and dismissed the complaint when that wasn't at all what was alleged. In addition to that, Well, that may or may not, I'm just trying to focus on the issue is, is this a matter that belongs to the FDA or does not? And can you explain the theory on why it does not, why it is not the FDA? Because the FDA is a regulatory licensing agency. And indeed, they do have authority to hear administrative complaints or challenges to the licensing. And there have been several files regarding the allegations of concealment and destruction of evidence in this case. And nothing has happened. However, Congress under Section 31 has also granted the secretary a statutory duty, and that's found in Section 27 of the Act, Mandates for Safer Vaccines. And it specifically lists a licensing duty of the secretary to ensure safer vaccines for children. And the argument is that if CDC, FDA scientists know about evidence linking MMR to autism, or even thimerosal to brain damage in vaccinated children, that is constructive knowledge that has been imputed to the secretary. And the secretary is in dereliction of their duties. We never alleged fraud against the Secretary of Health and Human Services. Section 31 provides a waiver of immunity for a dereliction of the duties. So I think the court got that wrong. There have been complaints to FDA. They've gone unanswered. There's been no action. And under this mandate for safer vaccines, the secretary has an independent statutory duty to ensure safer vaccines. And the court held because we did not prove fraud with regard to MMR causing autism. I couldn't show reliance. And then without that, we couldn't reach the secretary. And that is definitely not what happened. This is an independent action. So there's simply these three points here. And, you know, the first claim was that the MMR and the TCV caused autism, and that was never abandoned. The second was that as a result of the concealment and alleged destruction of evidence uncovered by CDC during the omnibus autism proceedings, that evidence was submitted by the secretary of HHS into the OAP proceedings and defeated my client's claim with a rather strong decision from the special masters that actually did get appealed to the federal circuit. And the court was very critical of the decision, describing it, you know, as an extremely dense determination at a stage where there is many unknowns of the science. And, you know, it's easy to criticize the experiments that demonstrate whether or not vaccines are linked to autism. But it was certain... Counselor, with respect to your fraud claim, didn't the fraud occur, according to your allegations, all the fraudulent activity occur after 2000, year 2000? It occurred, your honor. It first began, or we allege, in June of 2000 at a meeting where FDA, CDC scientists, and a scientist from Merck, a senior epidemiologist... So your client received all these vaccinations in 1999, isn't that right? No, your honor. Respectfully. What happened? Well, the timeline is what I think is wrong here. My client had received a series of vaccines leading up to November of 1999. And in November, the child got the MMR vaccine. In June of 2000, a month, I'm sorry, six months later, there was a conference held where Merck was in attendance, and evidence was discussed of CDC findings linking vaccines to brain injuries in children. And at that meeting, from a very specific CDC transcript that was obtained through FOIA, it was agreed by the participants at that meeting to keep the evidence out of less responsible hands. That was in June of 2000, a month later. Here's my point. My point is, if your client received the shot, the MMR, in 1999, and the ghastly actions that you're referring to occurred in 2000, how did you rely on the fraudulent conduct in receiving the vaccine? Because the claim was not that the MMR alone caused the autism. It was that the MMR and the TCV series caused the autism, and my client was injected with another TCV vaccine in July, a month after the June 2000 conference. And then it continued. In 2002, CDC conducted another study, and during that... I see. Maybe I'm misunderstanding this. I have thought that you had only exhausted your TCV under the OAP, and not the MMR. Ah, MMR vaccine. And that was continued under... That was what this lawsuit was about. This lawsuit was about the... And the fraud was with respect to your clients receiving the MMR. But you're telling me that's incorrect. Yes, it's incorrect, because in the complaint, my client alleged MMR and TCVs combined caused the autism, and that's on page 6, page 9, page 10, 54, 70, 220. She never abandoned the claim in the OAP that it was the MMR and TCVs that caused autism. Well, excuse me. If it was never... This is Judge Lynch. If it was not abandoned before the OAP, what happened to it? In other words, I thought the situation was that the steering committee was making decisions, and that they decided to abandon the joint claim, as it were. Or rather the... Maybe I'm just confused, but that claim was pursued in the OAP and was decided adversely. Is that the situation? So you did exhaust it that way? Oh, she definitely exhausted it, because there was no MMR alone theory. And this entire decision of the district court is predicated on a finding that my client alleged MMR caused her autism. That is not what she alleged. She alleged the MMR and TCV caused the autism, and she was covered under the other three test cases. I got it. I understand. She had been selected as a TCV case. She never abandoned the MMR-TCV claim together. She rejected that judgment, and then several years later evidence was revealed that during a 2002 CDC autism study that there was evidence collected by CDC supporting the theory that MMR causes autism, and that evidence, according to the CDC whistleblower, who was one of the researchers in the study, he said that the CDC researchers met in a conference room, and they destroyed that evidence. They sanitized the study results, published them in a journal called Pediatrics, and then the Secretary of Health and Human Services admitted that Pediatrics journal as evidence during the OAP defeating the MMR and TCV claims. None of the OAP petitioners knew about any of this evidence during the OAP proceedings. None of this came to light until July of 2015 when the whistleblower went to Congressman Posey and gave statements, and there's transcripts and evidence where he claims, and he's alleging that the government knew about it. Where this gets to Merck, I think, primarily is during the time the CDC director, who was overseeing this study and the whistleblower's work, the whistleblower alleges that the director knew about the destruction of evidence, the sanitizing of that study report that eventually made its way into the OAP. And she has immunity, there's no doubt about it. All of those CDC scientists, they all have immunity. But in 20- Counsel? Yes, ma'am. Counsel, this is Judge Fuller. Your time has long expired. Did you reserve some time for rebuttal? I know you were not there at the start of court. Would you like to reserve some time for rebuttal? Yes, Your Honor, I was here. I don't know if there was a mistake there, but yes, and three minutes would be fine. But could I just finish that sentence and I'll- Yes, finish your sentence and then we'll move on to the two defendants. The point I was trying to make is that if the CDC director had immunity while at CDC and knew about this, in 2010, that director was then hired at Merck, and Merck is required to disclose whatever knowledge they have of evidence showing vaccine harm, whether it was then in 2000 or later discovered. And Merck, the knowledge of the director who now works for Merck has been imputed to Merck, and Merck has not disclosed that, violating the disclosure provisions of the act. Thank you. Thank you, Counsel. We'll hear from Health and Human Services. Good morning, Your Honor. I am Assistant United States Attorney Leilani Zasala-Vasek with the Eastern District of New York. Here on behalf of Defendants Appellees, U.S. Department of Health and Human Services, the HHS, Secretary, and the Commissioner of the FDA, the Food and Drug Administration, the District Court correctly dismiss the underlying action. This suit brought by Plaintiff Appellant Jane Doe, individually and as guardian of Baby Doe, arises from the alleged inoculation in 1999 of Baby Doe, Plaintiff's now adult son, with both TCVs and the non-TCV MMR manufactured by Merck. About 15 years ago, Baby Doe joined the Omnibus Autism Proceeding, or OAP, along with thousands of petitioners under a statutory rubric for handling vaccine-related personal injury suits at the Court of Federal Claims. The OAP petitioners all alleged their autism had been caused by TCVs and or the MMR, and selected six separate test cases, among them Baby Doe's own case, to litigate causation theories. Baby Doe's group litigated TCV causation. In 2009 and 2010, OAP special masters issued exhaustive decisions holding that no petitioner had come close to proving causation. And six years later, Plaintiff filed this action against both Defendant Appellee Merck and the government. As against Merck, Plaintiff alleged adverse vaccine side effects that Merck had hidden from the government and sought monetary and other relief. As against the government, the third amended complaint asserts only one claim, a Citizens' Action pursuant to 42 U.S.C. Section 300AA-31A of the National Child Vaccine Injury Act of 1986, or the Vaccine Act. That claim may be brought against the HHS Secretary for an alleged failure to perform an act or duty under Part 2 of the Vaccine Act. Plaintiff failed to identify any such omission. Instead, the Section 31A claim, as pled, is predicated on two MMR studies allegedly flawed by research misconduct. These studies are notably not cited in the exhaustive 2010 OAP decision in Baby Doe's own case. Plaintiff further allegedly – Plaintiff further alleges wrongful conduct by HHS counsel while litigating at the OAP and submitting those same studies in other cases. As relief under Section 31A, Plaintiff asks the court first to declare that TTVs or the MMR do cause autism, effectively circumventing in a new forum for OAP laws, and two, to require FDA to revoke Merck's license, despite failing to first petition FDA administratively. The district court's dismissal of the Section 31A claim should be affirmed on multiple independent grounds. First, Plaintiff lacked standing to bring such claim against the only proper party to it, the HHS Secretary. Second, even if Plaintiff had standing, she failed to state a 31A claim, despite this being her fourth bite at the apple and having been warned by the court that this amendment would be her last. She cites no provision under the Vaccine Act not performed, let alone factual allegations, supporting the failure to apply unidentified metrics for revocation of Merck's MMR license. And third, even if Plaintiff had both standing and had stated the claim, license revocation and a declaration on autism causation are simply improper remedies. Accordingly, the dismissal of Plaintiff's claim against the government should be affirmed. Thank you. We will hear from Merck. Good afternoon. May it please the court. I'm Dino Sangiama, I represent L.A. Merck in this matter. As the court is aware, there are three counts in the complaint. I'd like to start with the third count, if I might. And I'd like to start there because the relief being sought in that third count is not only extraordinary, but it would be extraordinarily catastrophic for public health were it to be granted. The proposition of being advanced by the plaintiff is that the MMR vaccine, which is recommended by the CDC for routine administration to children, and has been recommended for many decades now, and is a cornerstone of pediatric care in this country. The proposition is that that should simply be pulled from the market. Merck is the only manufacturer that has a license for MMR in the United States. It's a critically important and very safe vaccine. Judge Poehler asked whether there's any scientific support for the claim that vaccines, or particularly MMR, can cause autism. That's the very issue that was adjudicated at length in the vaccine court in the omnibus autism proceeding. We've cited some of the rulings from those decisions. The decisions were exhausted, and they all came to the same conclusion was that this was not a close call. There's just no evidence to support those theories. There are two studies that the plaintiff points to that the plaintiff says were improperly considered in the OAP. Whatever may be said of those charges that those were not well done studies, they played only a minuscule role, or in the case of Baby Doe's case, no role whatsoever in the decisions that were rendered in the OAP. There's no allegations in the complaint, no theory being proposed, no cause of action, whether statutory or common law, that would support a holding by a court that the MMR license should be revoked. And the decision rendered by the district judge that if there is going to be any discussion of revocation, that's a discussion that has to be had with the FDA in the first instance was absolutely correct. Moving to count one, which the district court construed as a claim for damages, that, too, was properly dismissed. The district court dismissed it on the grounds of failure to exhaust, and that was a proper basis to dismiss. Even if the claim had been exhausted, dismissal would have been appropriate anyway because the claim does not state a cognizable cause of action. To clear up some of the issues that were discussed in Ms. Finn's initial remarks, there were three different theories that were initially proposed in the omnibus autism proceeding. One of them was that MMR can cause autism. Another was that MMR in combination with thimerosal-containing vaccines can cause autism. And another one was that thimerosal-containing vaccines alone can cause autism. In the end, only two of those three theories were litigated, the one that MMR in combination with thimerosal-containing vaccines can cause autism and the one that thimerosal-containing vaccines alone can cause autism. The theory that MMR alone can cause autism was not litigated, and the reason it was not litigated, as stated earlier in Judge Lynch's question, the reason it was not litigated was because the plaintiff's steering committee, the petitioner's steering committee, realized that the only evidence that they would advance in support of that theory was the same evidence that had been resoundingly rejected when the MMR plus thimerosal-containing vaccines theory was litigated. Baby Doe's case was just a thimerosal-containing vaccines only case. We've cited the portions of the special magistrate's decision where she states explicitly that Baby Doe was not pursuing an MMR case. We cite those at page 11 of our brief. So a claim that MMR caused Baby Doe's autism, let me say that again, a claim that MMR caused Baby Doe's autism, that was not litigated in vaccine court. That was not litigated by Baby Doe, and it has not been exhausted. In fact, even a claim that MMR plus thimerosal-containing vaccines caused autism in Baby Doe, that too was not litigated. The only thing that was litigated in vaccine court by Baby Doe in furtherance of her obligation to exhaust was the claim that thimerosal-containing vaccines alone caused autism. So what does this mean? Does this mean that Jane Doe and Baby Doe can still do MMR in the court? No, Your Honor. Your Honor, what theoretically Baby Doe and Jane Doe could conceptually sue a vaccine manufacturer for would be an injury attributable to thimerosal-containing vaccines. However, there is no allegation that Baby Doe received a thimerosal-containing vaccine made by Merck. I would also say the only fair read of the complaint is that the allegation in the complaint was that MMR was the cause of Baby Doe's vaccines. But in any event, the only claim that's been exhausted was the thimerosal-containing vaccines claim. And there is no allegation in the complaint that Baby Doe received a thimerosal-containing vaccine manufactured by Merck. We also pointed out in our brief that... Were other manufacturers also making the MMR vaccine at the time that Baby Doe got his? No, Your Honor. So if he got it, wouldn't it stand to reason that he had got it from Merck's manufacturer? Yes, Your Honor. The MMR vaccine that Baby Doe received was manufactured by Merck. What was not manufactured... What do you mean when you say there's no evidence? What I meant to say was that if the claim being made is that Baby Doe was injured by thimerosal-containing vaccines, then that would not be a claim that could be made against Merck because there is no allegation that Baby Doe received a thimerosal-containing vaccine made by Merck. And it occurs to me I should introduce this one critical fact, which is MMR does not contain thimerosal. So by definition... Your version of MMR does not contain thimerosal? That's correct, Your Honor. And our version of MMR is the only version available in the United States. In fact, I think all versions of MMR have never contained thimerosal, although I'm not sure of that. Counselor, this is Judge Walker. I understand that... Are you saying that MMR was made by Merck, but that that claim was not exhausted by Baby Doe? Is that correct? That is correct. And so the only claim... The only vaccine that was made by Merck wasn't exhausted. And then as far as the one that was exhausted, there's no claim that that was by Merck. That's correct, Your Honor. Okay. That's correct, Your Honor. That's correct. Because there were other vaccines, and they may have contained thimerosal. I think the allegation is that they did. That's correct, Your Honor. There's just no allegation that they were made by Merck. And, in fact, in an earlier submission in this case, plaintiffs went so far as to say that their understanding is that none of the thimerosal-containing vaccines that plaintiffs received were made by Merck. But the bottom line is there's certainly no allegation of one, of having received one, that was made by Merck. And if I could also, in that vein, if I could pick up on Judge Walker's question previously, focusing on the timeframe of the allegations, the MMR vaccine that Baby Doe received was received by him in November of 1999. The first event of ostensibly nefarious conduct was a meeting in June of 2000. Let me first point out that that meeting, which was a government-sponsored meeting at which government researchers provided information to various people, including Merck and other members of the government, that was a meeting about safety associated with thimerosal-containing vaccines. It was not a meeting about safety associated with MMR. There are two vaccines that the plaintiff alleges were received subsequent to that meeting, received the next month. But those were the thimerosal-containing vaccines. Therefore, those were the vaccines that were not manufactured by Merck. So as a result, there's really no way for plaintiff to get around the problem noted by the district court that the ostensibly wrongful acts, which I'll just add, we submit just don't make any sense as allegations on their own. But in any event, there's no getting around the fact that the ostensibly wrongful acts all occurred after the plaintiff received the MMR vaccine made by Merck and therefore could not have had any impact on the decision to receive MMR. Thank you, counsel. You have three minutes for rebuttal. Thank you. Can I ask you, counsel, why Merck is still in the case after what Mr. Sanjiamo just explicated? Well, first of all, the claim was that the MMR, when combined with TCV vaccines, causes autism. So it wasn't necessary that the plaintiff receive a TCV vaccine made by Merck. The allegation is that the MMR, when combined in a series of vaccines that contain dimerazole, it can cause isolated autism. And there is an abundance of research that shows children, particularly little boys, that get vaccines in a series, that the MMR in a series of TCV vaccines causes autism. Was the combination of the MMR and the other TCV vaccines litigated in the case? Yes, yes. That was the only two theories. It was MMR and TCV and Merck made the MMR. And notably, Your Honor, there are other manufacturers that make MMR. So I just want to put that out. As far as the TCV case and the special master vow stating that the claim was brought under TCV, that is correct for the TCV test case. But my client never abandoned her claim that it was MMR and TCV combined that caused the autism. And the alleged nefarious events were in November of 1999, the baby got an MMR vaccine after a deluge of dimerazole containing vaccines, which we did allege some of them came from Merck. A month later, Dr. Guess, Merck's scientist, was at a meeting where TCVs were discussed. And there was overwhelming evidence linking the dimerazole to brain injuries in children. And that evidence, it was agreed at the end of the meeting would not be disclosed. And a month later, my client received a TCV vaccine. It didn't matter where the mercury came from. The fact is it was given in combination with the MMR vaccine. And then I think what's being overlooked here, which is extremely important, is that two years later, in 2002, CDC conducted a study in Atlanta. And they found a correlation, a strong correlation between MMR, receipt of MMR and autism in children under three. And the whistleblower evidence that we've provided to the court says that that evidence was destroyed. A sanitized version of that study was then published and submitted into evidence in OAP by the respondent, Secretary of Health and Human Services, and defeated all six claims. So, you know, it was definitely there. There was absolutely, it didn't matter where the dimerazole came from. The allegation was that the MMR combined with the mercury caused the autism. And my client absolutely got that vaccine a month after Merck became aware that the mercury was causing brain injury. But what did Merck have to do with Baby Doe receiving the dimerazole vaccines? Well, it would have been required under the Vaccine Act to disclose that the dimerazole had been linked to brain injury in children. And that type of alert that goes out. But you just said that that information came from the government in the first place. The reason Merck knows about it is because the government told them at this meeting. Well, you know, that's an excellent point, Your Honor, because it seems to me that, you know, simply because the CDC researchers didn't do about it, that didn't excuse Merck's independent obligations under the Vaccine Act to disclose. I'm puzzled. I would have thought that the Vaccine Act requires Merck to disclose to the government things that it knows and finds out. It seems odd to suggest that Merck violated a duty to disclose to the government information that the government already had, and that Merck only knew because the government told them and a number of other people at a meeting. What am I missing? Well, it was the CDC that told Merck. But under the Vaccine Act... But isn't the CDC part of the government? Yes, yes. And aren't they under the secretary of HHS? Which is precisely my point. Their knowledge is imputed to this secretary, which supports the allegation. So then what did Merck do wrong in failing to disclose to the government something that the government already knew? Merck had an obligation to disclose in the packaging inserts and the warning labels under the Vaccine Act that the Marisol had been linked to vaccine-induced brain injury. And in 2002, there was another CDC study that linked specifically the MMR to autism during the OAP. And that, too, was never disclosed. And in 2010... Counsel, once the conclusion was made that the Marisol causes or could cause brain injury, was that removed from the vaccine? Well, it depends on where you're looking. No, it has not. It is definitely still in many vaccines. It's in vaccines given to pregnant women. It is still in the vaccines, and it's mandated in New York State. So the fact is that children receiving MMR are still getting the Marisol. And we know now with certainty, as CDC knew and Merck knew, and they were both obligated to disclose, and nobody has done that. And even if CDC was derelict in its duty, the CDC, as opposed to the secretary, was derelict in its duty in concealing that evidence, that doesn't excuse Merck from its corresponding duty to report in the packaging inserts and warning labels that combining the Marisol with the MMR can cause autism. It doesn't say that anywhere. In fact, the CDC website states that the vaccines do not cause autism, and that is a knowingly false statement, because during the OAP proceedings, there was another child petitioner named Hannah Poling. And Hannah Poling, at the same time that baby Doe received the vaccine, she received, I think it was nine vaccines, the MMR and the Marisol-containing vaccine. She slipped into autism, and then the government settled that case confidentially. None of the other OAP petitioners learned about it. So, the government's conclusion, or the court's conclusion, that MMR is linked to autism as being meritless is completely unfounded, because there's prima facie proof, at least in one case, that the government conceded that Hannah petitioned, Hannah Poling's vaccine, her autism had been vaccine-induced. And so, there is evidence that vaccines can cause autism, particularly MMR combined with Marisol, which is exactly what was pledged. And my client never abandoned that in the OAP, simply because she appeared as a TCV vaccine. Okay. We have to finish your sentence. Pardon? Your time has long expired. Oh, thank you. I'm sorry about my voice. I have a really bad laryngitis. Yeah, no apologies are necessary, certainly, to us. We will take this case on advisement and reserve decisions. That being the last case on our argument calendar, I will ask the clerk to adjourn court. Court is adjourned.